Virginia T. MEUSER, Plaintiff-Appellant,

v.

ROCKY MOUNTAIN HOSPITAL, a Colorado corporation, and Robert H. Pierce, Defendants-Appellees.

No. 83CA0357.

Colorado Court of Appeals, Div. II.

March 29, 1984.

Rehearing Denied April 26, 1984.

Certiorari Denied Aug. 7, 1984.

Louis A. Weltzer, David L. Worstell, Denver, for plaintiff-appellant.

Montgomery, Little, Young, Campbell & McGrew, P.C., William H. ReMine, III, Englewood, for defendants-appellees.

BABCOCK, Judge.

Plaintiff, Virginia T. Meuser (Meuser), appeals from the summary judgment entered in favor of defendants, Rocky Mountain Hospital (the hospital) and its administrator, Robert H. Pierce (Pierce), on her claim of intentional infliction of emotional distress by outrageous conduct and upon two claims for defamation. We affirm.

Meuser was a nurse employed by the hospital when a nurses' union was formed there in December 1979. In February 1980 she was elected treasurer of the hospital chapter of the union.

In September 1980 the union entered into contract negotiations with the hospital. Meuser was not on the negotiating team but at times she sat in on the bargaining sessions as an observer. The negotiations were proceeding slowly and with difficulty.

In September 1980 a conversation occurred between Meuser and a hospital pharmacist during which the subject of unions was discussed. According to Meuser, the pharmacist raised the subject by saying, "You know the unions do bad things," and related that a union member had slashed tires at another place of employment. He then asked, "You wouldn't do that to me?" and she responded, "I may, I might." The pharmacist testified that as Meuser was leaving the pharmacy she said something about slashing his tires to which he replied, "You've got to be kidding," and she answered, "Just try me."

Meuser testified that any reference to slashing tires was made in jest. The pharmacist testified that as he contemplated her remarks, he became concerned and therefore reported the incident to the head of the pharmacy who reported it to the director of nursing.

A written statement was taken from the pharmacist and was compiled by the hospital administration with other reports of union related incidents showing a suspected pattern of coercion of employees by union members. At the end of November 1980, as part of the hospital's objection to a collective bargaining election held that month, these incidents, including the remarks made by Meuser to the pharmacist, were reported to the National Labor Relations Board (NLRB) for investigation.

On December 30, 1980, Pierce wrote a letter to Meuser stating:

"This is to advise you that the hospital administration has become aware of alleged threats made by you relating to support of the union. This is currently under investigation. Such activity is considered to be serious misconduct which may result in disciplinary action."

Meuser considered the letter of December 30 to be a threat of dismissal. On December 31, 1980, Meuser replied to Pierce by letter denying the accusation and offering to meet with him and her union representative to discuss the matter.

By January 2, 1981, there was imminent possibility of a strike. Pierce, by letter to Meuser, declined to meet with her and her representative because he had been advised that it would be inappropriate to discuss the labor dispute with them.

On January 9, 1981, the union filed charges of unfair labor practices with the NLRB alleging generally that the hospital had engaged in a campaign of reprisals against employees including termination of employment. These charges were amended two months later to include the specific allegation that "on or about December 29, 1980 the hospital did harass and intimidate its employee, Virginia Meuser, because of her activities on behalf of the union."

Meuser went on sick leave on January 10, 1981, because of anxiety over what she considered to be a threat of termination in Pierce's letter of December 30. Thus, she did not attend the question and answer session held by Pierce for hospital employees a few days later addressing their concern about security. However, she did attend a union meeting shortly thereafter where a fellow union member related to her a statement purportedly made by Pierce at the earlier meeting. The gist of the statement was that the hospital "was going to build a fence around the parking lot to keep that nurse from carrying out her threats." Upon hearing this, Meuser became ill and consulted a physician.

On January 16, 1981, Pierce wrote Meuser a letter in which he stated that there was no intent of threat or reprimand, that she was considered a valuable employee, and that her job was not in jeopardy. The union went on strike on January 21, 1981. Meuser continued on sick leave until she resigned her position at the hospital in February 1981.

Upon the above undisputed facts, the trial court concluded as a matter of law that the National Labor Relations Act, 29 U.S.C. §§ 157 & 158, preempted Meuser's claims for outrageous conduct and defamation, and thus, it was without subject matter jurisdiction. We agree.

The general rule with regard to preemption in this area is set forth in *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959) as follows:

"When it is clear or may fairly be assumed that the activities which a state purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield. To leave the state free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law."

Thereafter, in *Linn v. United Plant Guard Workers*, 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966), it was held that where a party to a labor dispute circulates false and defamatory statements during a union campaign, the state courts have jur-

isdiction to apply state remedies if the plaintiff pleads and proves that the statements were made with malice and resulted in injury. The court construed the act to permit recovery of damages in a state cause of action for defamatory statements only if such statements are published with actual malice, *i.e.*, with knowledge of their falsity or with reckless disregard of whether they were true or false. *See Burns v. McGraw-Hill Broadcasting Co.*, 659 P.2d 1351 (Colo.1983). This then is the standard applicable here.

Here, the alleged defamatory statements consist of Pierce's reference to Meuser's colloquy with the pharmacist in his letter of December 30, which was published to other employees, and his statement to employees at the January 13 question and answer session concerning construction of a fence around the parking lot. It is undisputed that Meuser intimated to the pharmacist that she might slash his tires. And, it is undisputed that there was concern among employees of the hospital with regard to their security because of the impending strike.

The test for determining whether these statements were published with reckless disregard is "whether there is 'sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication.'" *Burns v. McGraw-Hill Broadcasting Co.*, *supra; Willis v. Perry*, 677 P.2d 961 (Colo. App.1983). And, in determining whether a genuine issue as to actual malice is present in the context of a motion for summary judgment, the trial court must decide whether:

> " 'The plaintiff has offered evidence of a sufficient quantum to establish a prima facie case, and the offered evidence can be equated with a standard or test of convincing clarity prescribed by United States Supreme Court decisions ....' "

*DiLeo v. Koltnow*, 200 Colo. 119, 613 P.2d 318 (1980) (emphasis removed).

Further, the party opposing the motion for summary judgment cannot rely on the allegations of his pleadings, but must present specific facts constituting a genuine issue for trial. *DiLeo v. Koltnow, supra; Lane v. Arkansas Valley Publishing Co.*, 675 P.2d 747 (Colo.App.1983).

We conclude that Meuser failed to show by clear and convincing evidence that the alleged defamatory statements were false or that defendants entertained serious doubts as to their truth. Having failed to meet her burden with regard to the standard prescribed by *Linn v. United Plant Guard Workers, supra*, the National Labor Relations Act preempts Meuser's tort claims in defamation. Thus, as a matter of law, the trial court did not have jurisdiction over these claims.

■ In *Farmer v. United Brotherhood of Carpenters & Joiners*, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977), it was held that federal law did not necessarily preempt a union member's claim of intentional infliction of emotional distress by outrageous conduct occurring in the context of a labor dispute. However, as regards such a claim: (1) concurrent state and federal jurisdiction is not permitted if the state interest is not substantial; and (2) concurrent jurisdiction is not allowed if the alleged emotional distress resulted from actual or threatened loss of employment itself rather than from the particularly abusive manner in which the employment loss was accomplished or threatened. *Farmer v. United Brotherhood of Carpenters & Joiners, supra; Viestenz v. Fleming Companies, Inc.*, 681 F.2d 699 (10th Cir.1982).

While the question of whether certain conduct is "outrageous" is ordinarily one for the jury, it is for the court to determine in the first instance whether reasonable persons could differ on the outrageousness issue. *Meiter v. Cavanaugh*, 40 Colo.App. 454, 580 P.2d 399 (1978).

■ We conclude upon the undisputed facts that Meuser's claim for intentional infliction of emotional distress by outrageous conduct does not fall within the exception to the preemption rule. *See Viestenz v. Fleming Companies, Inc., supra; Magnuson v. Burlington Northern, Inc.,*

576 F.2d 1367 (9th Cir.1978). First, the conduct alleged by Meuser is not sufficiently outrageous to justify the intrusion of state jurisdiction. *See Viestenz v. Fleming Companies, Inc., supra; Meiter v. Cavanaugh, supra; Colo. J.I.* 23:2 (2d ed. 1980). Second, the harm of which Meuser complains resulted from the fact that she perceived the December 30 letter from Pierce to be a threat of discharge rather than abusive conduct by the hospital or Pierce. Therefore, the trial court did not have subject matter jurisdiction over this claim.

Judgment affirmed.

BERMAN and KELLY, JJ., concur.