580 P.2d 399 (1978)
Hazel MEITER, Plaintiff-Appellee,
v.
Frank M. CAVANAUGH, Defendant-Appellant.
No. 77-013.
Colorado Court of Appeals, Division I.
March 16, 1978.
Rehearing Denied April 6, 1978.
Certiorari Denied July 3, 1978.
*400 Raphael M. Solot, Denver, for plaintiff-appellee.
Myles J. Dolan, Arvada, for defendant-appellant.
PIERCE, Judge.
Defendant appeals from an adverse judgment entered upon a jury verdict, alleging that plaintiff failed to establish a prima facie case of intentional infliction of emotional distress by outrageous conduct. Defendant also argues that the evidence is insufficient to justify the award of $5,500 in actual and $10,000 in exemplary damages. We affirm the judgment in its entirety.
Because we are presented with the question of whether the trial court erred in refusing to grant defendant's motions for a directed verdict and judgment notwithstanding the verdict, we must review the record in a light most favorable to the plaintiff. Celebrities Bowling, Inc. v. Shattuck, 160 Colo. 102, 414 P.2d 657 (1966).
In March of 1973, plaintiff and defendant entered into a specific performance contract, under which plaintiff was to purchase defendant's home. Plaintiff wanted to buy the house for her grandchildren and recently widowed daughter-in-law. The contract provided that defendant would have a right to retain possession of the property on a rental basis for a period not to exceed six weeks after the delivery of the deed. Since the deed was delivered at the closing on April 12, 1973, defendant's rental period ended on May 25, and plaintiff was entitled to exclusive possession on May 26.
Sometime in late May or early June, plaintiff went to the house to inquire about the surrender of possession. Defendant informed her, for the first time, that he would be unable to move until the end of his children's school term, sometime in early June. Plaintiff explained that her daughter-in-law desperately needed a place to stay. Defendant became quite belligerent, and responded, "Well, as far as that's concerned, you can move [her furniture] up in that shanty. When I get out, you can roll it down the hill."
During another early June encounter, defendant told plaintiff, "I'm an attorney. I know my rights. I'll move when I'm damn well ready." He also called plaintiff, who was visibly bandaged after recent cancer surgery, a "sick old woman."
On June 7, 1973, defendant mailed a letter to plaintiff notifying her that he was considering legal action. The letter implied that defendant had some special influence with the court:
"I am sure the local court known personally to me over the years, will appreciate my problem . . .. In fact, he may just break our contract, which would satisfy me and I will repay every cent of your money."
Meanwhile, plaintiff had to find another home for her daughter-in-law, and she purchased one on June 13, 1973. When defendant finally vacated in early July, plaintiff found that the premises had been damaged. Some windows were broken, a few sliding doors were untracked, and the lock on the back door was broken. Several outdoor light fixtures had been removed, and a built-in barbeque had been dismantled. After repairing some of this damage, plaintiff sold the house in December.

I.
The first question we must address is whether this conduct was sufficiently "outrageous" to withstand defendant's motions for a directed verdict and judgment notwithstanding the verdict. We hold that it was.
The tort of intentionally inflicting emotional distress by outrageous conduct was first recognized in this jurisdiction in Rugg v. McCarty, 173 Colo. 170, 476 P.2d 753 (1970). In that case, the Supreme Court adopted Restatement (Second) of Torts § 46 (1965):

*401 "Outrageous Conduct Causing Severe Emotional Distress (1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."
The court went on to quote the Restatement's definition of extreme and outrageous conduct:
"Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, `Outrageous!'"
The question of whether certain conduct is sufficiently outrageous is ordinarily a question for the jury. DeCicco v. Trinidad Area Health Ass'n, Colo.App., 573 P.2d 559 (announced September 15, 1977); Enright v. Groves, Colo.App., 560 P.2d 851 (1977). But it is for the court to determine, in the first instance, whether reasonable men could differ on the outrageousness issue. Blackwell v. Del Bosco, 35 Colo.App. 399, 536 P.2d 838 (1975), aff'd, Colo., 558 P.2d 563 (1976); Restatement (Second) of Torts § 46, Comment h. We believe that the conduct here lies so near the bounds of indecency that the question of whether it is actionably outrageous was properly left to the jury.
It is true that "plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind." Prosser, Insult and Outrage, 44 Cal.L.Rev. 40 (1956). But defendant's words and acts were more than rough, inconsiderate, and unkind. In refusing to vacate, defendant acted outside the scope of his legal rights under the lease. He compounded the situation not only by becoming generally belligerent, but also by referring to plaintiff's serious and unfortunate physical condition. Finally, the whole disagreement was inflamed by defendant's suggestion that, as an attorney, he would have some special influence in any judicial proceeding.
While any one of these acts might be considered an isolated unkindness or insult which would not survive a motion for a directed verdict, we cannot say the same for the combination. Since reasonable men could differ on the question of whether this series of acts was "outrageous," the trial court was correct in denying defendant's motions for a directed verdict and judgment notwithstanding the verdict.

II.
Defendant argues that the award of damages was excessive and unsupported by the evidence. Again, we disagree.
The amount of damages is within the sole province of the jury, and an award will not be disturbed unless it is completely unsupported by the record. See Bohlender v. Oster, 165 Colo. 164, 439 P.2d 999 (1968).
Here, there was evidence that plaintiff spent over $900 in repairing the damage to the house. There was also evidence that she suffered a loss exceeding $1,700 in re-selling the house, as well as incurring a substantial sum in brokerage fees. These out-of-pocket expenses, in addition to the damages attributable to the mental distress alone, were sufficient to support the award. The individual acts, or failures to act, which resulted in these expenditures, could be considered by reasonable jurors to be part of the total scheme of outrageous conduct directed at this plaintiff by this defendant. The isolated fact that plaintiff may not have incurred medical expenses immediately after the incidents does not require reversal. Enright v. Groves, supra.
Nor does the fact that these out-of-pocket expenses may have been recoverable in an action for breach of the lease preclude their recovery in tort. Where, as here, the *402 defendant's conduct resulted, and could reasonably have been expected to result, in both pecuniary loss and emotional injury, all compensatory damages proximately caused by such conduct are recoverable in a single action. See Fletcher v. Western National Life Insurance Co., 10 Cal.App.3d 376, 89 Cal.Rptr. 78 (1970).
Since the award of actual damages was supported by the record, and since the exemplary damages are not manifestly exorbitant, we affirm the judgment as to exemplary damages as well. See Wegner v. Rodeo Cowboys Ass'n, 290 F.Supp. 369 (D.Colo.1968), aff'd, 417 F.2d 881 (10th Cir.1969), cert. denied, 398 U.S. 903, 90 S.Ct. 1688, 26 L.Ed.2d 60 (1970); Enright v. Groves, supra.
We have reviewed the balance of defendant's allegations, and find them to be without merit.
The judgment is affirmed.
ENOCH, J., concurs.
COYTE, J., concurs in part and dissents in part.
COYTE, Judge, concurring in part and dissenting in part:
I agree that the conduct of defendant toward the plaintiff constituted outrageous conduct. However, I feel that the award of damages is excessive and not supported by the evidence, where to justify the award, the majority has to point to the consequential damages suffered by plaintiff because of defendant's breach of contract. The cause should be remanded for a new trial on the damage issue but limited to mental suffering and the consequential damages flowing from the mental suffering and not the breach of contract.