Tammie R. ELLIS, Plaintiff–Appellee,

v.

David M. BUCKLEY, an employee of John E. Reid & Associates, Inc., and John E. Reid & Associates, Inc., an Illinois corporation, Defendants–Appellants.

No. 87CA1322.

Colorado Court of Appeals,
Div. I.

Nov. 16, 1989.

Rehearing Denied Jan. 11, 1990.

Certiorari Denied April 30, 1990.

Law Offices of John G. Salmon, P.C., John G. Salmon and Mark L. Anders, Denver, for plaintiff-appellee.

Morrato, Bieging, Burrus & Colantuno, P.C., James J. Morrato and Stephen B. Shapiro, Englewood, and Charles F. Marino, Chicago, Ill., for defendants-appellants.

Opinion by Judge PLANK.

David M. Buckley and his employer, John E. Reid and Associates, Inc., appeal the judgment entered on jury verdicts in favor of plaintiff, Tammie R. Ellis. We affirm.

John E. Reid and Associates, Inc., is in the business of conducting internal theft investigations. It was hired by the plaintiff's employer to investigate some cash shortages that had been discovered at the store where plaintiff worked.

At the request of her employer, plaintiff submitted to a polygraph examination, which was conducted by Buckley and which lasted about fifteen minutes. Buckley interpreted the test results as indicating that plaintiff was being deceptive in her responses. As a result he informed her that she had "failed" the polygraph test, and he proceeded to interrogate her for over two hours in a post-test interview.

During that interrogation, according to plaintiff, Buckley spoke in a harsh manner and repeatedly asked her if she had not stolen money or goods from her employer. She testified that apparently Buckley did not believe her denials or responses, as he badgered her throughout the interview. Buckley then reported to the plaintiff's employer that his analysis of the polygraph test indicated that plaintiff was deceptive in her answers. As a result, plaintiff's employment was terminated. As a consequence of losing her job, plaintiff experienced insomnia and other signs of emotional distress for a period of time.

Plaintiff commenced this action, alleging that the defendants had engaged in "outrageous conduct" during the test and post-test interview, and that they were negligent in improperly reporting the results of the polygraph examination. The plaintiff also sought exemplary damages. From a judgment entered upon a jury's verdict in favor of the plaintiff on all claims, this appeal followed.

I.

Defendants contend that the trial court erred in denying their motion for a directed verdict on the plaintiff's claim for outrageous conduct. We disagree.

To prevail on a claim of outrageous conduct, plaintiff must establish that the defendants, by extreme and outrageous conduct, intentionally or recklessly caused her severe emotional distress. *Rugg v. McCarty*, 173 Colo. 170, 476 P.2d 753 (1970). Outrageous conduct is that which is so "outrageous and extreme as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community." *Hansen v. Hansen*, 43 Colo.App. 525, 608 P.2d 364 (1979).

■ The trial court is to determine in the first instance whether reasonable persons could differ on the outrageousness issue. *Meiter v. Cavanaugh*, 40 Colo.App. 454, 580 P.2d 399 (1978). If answered in the affirmative, the question of whether conduct is sufficiently outrageous to warrant an award of damages is one for the jury.

Here, the evidence showed that Buckley escorted the 20–year–old plaintiff to a small interrogation room where he questioned her for over two hours without telling her she could leave. Although her background was exemplary and no evidence (besides the polygraph test) indicated any wrong doing, he repeatedly accused her of theft despite her constant denials, and continued the interrogation, even though she was crying, in an attempt to obtain a confession from her.

In denying the defendant's motion for directed verdict on the outrageous conduct claim, the trial court stated that:

"In the light most favorable to the plaintiff ... I have no trouble with my duty as a judge of this court to say that the conduct would fit within the extreme and outrageous conduct."

We agree with the trial court that reasonable members of the community could conclude that defendant Buckley's conduct here was outrageous. *See Rugg v. McCarty, supra.* Accordingly, the trial court did not err in denying the defendants' motion for a directed verdict.

## II.

■ Defendants next contend that the claim of negligence should not have been submitted to the jury because plaintiff failed to establish a standard of care. We disagree.

Here, to prevail on a claim of negligence, the plaintiff must establish that the defendant breached a duty of care in conducting the polygraph test and in analyzing and reporting the results, thereby causing damages to the plaintiff. *See Palmer v. A.H. Robins Co.*, 684 P.2d 187 (Colo.1984).

A legal duty to use reasonable care arises in response to a foreseeable risk of harm to others. *Palmer v. A.H. Robins Co., supra.* The standard of care owed by a person in the business of providing unique services to those submitting to his services is the duty to exercise the ordinary skill and competence of other persons in the business of providing similar services. *See Metropolitan Gas Repair Service, Inc. v. Kulik*, 621 P.2d 313 (Colo.1980).

Here, we conclude that the evidence presented established the standard of care. Numerous expert witnesses, in the business of conducting polygraph tests, testified to the standard of care that is adhered to in the business. Furthermore, both parties' experts testified that they would have concluded that the plaintiff's test results were inconclusive. Hence, there was evidence indicating both a standard of care, and a breach of that standard, and the matter became one for the jury to resolve.

## III.

■ Lastly, the defendants contend that the evidence in the record does not support an award of exemplary damages. We disagree.

To award exemplary damages, the wrongful act must have been accompanied by a wrongful motive or a reckless disregard of the plaintiff's rights. *Mari v. Wagner Equipment Co.*, 721 P.2d 1208 (Colo.App.1986). An award of damages will not be disturbed on appeal unless it is completely ·unsupported by the record. *Meiter v. Cavanaugh, supra.* Here, we conclude that the evidence in the record supports the jury's award, and thus, we will not disturb the exemplary damage award on appeal.

Accordingly, the judgment is affirmed.

PIERCE, J., concurs.

HODGES *, J., dissents.

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const., art. VI, Sec. 5(3), and § 24–51–1105, C.R.S. (1988 Repl.Vol. 10B).

Justice HODGES dissenting.

I respectfully dissent.

I would reverse that part of the judgment and jury award of $48,000 for the plaintiff on her outrageous conduct claim. I perceive nothing from the plaintiff's testimony and other evidence which approaches outrageous conduct on the part of defendant Buckley during the polygraph test and subsequent interview with the plaintiff.

Viewing all the evidence in a light most favorable to the plaintiff, I cannot conclude that defendant Buckley's questions, comments, and conduct during the interview with plaintiff were so egregious as to be actionable. That is, in my view, they were not so outrageous in character and so extreme in degree that a reasonable member of the community would regard them as atrocious, going beyond all possible bounds of decency, and utterly intolerable in a civilized community. *See Rugg v. McCarty*, 173 Colo. 170, 476 P.2d 753 (1970) and *Hansen v. Hansen*, 43 Colo.App. 525, 608 P.2d 364 (1979).

According to the testimony of the plaintiff, defendant Buckley at times during the post-test interview spoke to her in a harsh manner and repeatedly asked her if she had not in fact stolen money or goods from her employer. She testified that apparently he did not believe her denials. She also testified that near the conclusion of the interview she began to cry and defendant Buckley handed her a tissue and then left the room at her request. The questioning ended shortly thereafter. I would classify this as no more than an unpleasant experience for the plaintiff who was anguished by the fact that defendant Buckley would not believe her denials of wrongdoing.

It is my strong view that the evidence falls far short of showing a cause of action for outrageous conduct. Hence, I would hold that the trial court erred in denying defendant's motion for a directed verdict on the outrageous conduct claim.

I would also reverse that part of the judgment awarding $125,000 to the plaintiff as exemplary damages on her claims of outrageous conduct and negligence, and remand to the trial court for a new trial on exemplary damages only. I believe the $125,000 award is not sustainable here for two reasons.

First, there is a real and significant question of law concerning whether this plaintiff may be awarded $48,000 in damages for outrageous conduct and also be awarded $125,000 as exemplary damages for outrageous conduct and negligence. Exemplary damages and damages for outrageous conduct are both directed toward deterrence and as punishment for intentional or reckless misconduct. Therefore, it would appear that that part of the exemplary damages award applicable to outrageous conduct is duplicative of the award for outrageous conduct. On this basis, the defendant is being doubly punished.

This issue has not been specifically resolved in Colorado. In *Vogel v. Carolina International, Inc.*, 711 P.2d 708 (Colo. App.1985), the issue was raised but not resolved in a situation in which there were two plaintiffs, one of whom was awarded punitive damages and the other was awarded damages arising out of the defendant's outrageous conduct. Under the ruling there, the duplicative damages issue, if applicable, would pertain only to cases involving a single victim.

In other jurisdictions, the courts have declined to award both punitive damages and damages for outrageous conduct because they are duplicative. *See, e.g., Knierim v. Izzo*, 22 Ill.2d 73, 174 N.E.2d 157 (1961).

Second, on the claim for negligence, the jury returned a verdict in favor of the plaintiff and awarded her damages of $74,000. In its ruling on defendants' post-trial motions, the trial court stated that this award "is grossly and manifestly excessive considering the evidence in this case." The trial court then made a finding that the evidence of damages resulting from defendants' negligence would support an award of $11,400 and ordered a new trial on negligence damages unless plaintiff accepted a remittitur of $62,600. The plaintiff accepted the remittitur. Thus, as to the defendants' negligence, the award is now $11,-

400 rather than the $74,000 awarded by the jury.

Since exemplary or punitive damages must bear some relation to the actual damages, *Frick v. Abell,* 198 Colo. 508, 602 P.2d 852 (1979), the amount of exemplary damages applicable to defendant's negligence should be reconsidered for this reason also. I also agree with the defendant's contention that there was a complete lack of sufficient evidence of the economic status of the defendants to support any substantial award of exemplary damages. *Higgs v. District Court,* 713 P.2d 840 (Colo.1985).